UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW S. ZUCKER, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil Action No. 16-cv-10353-IT |
| BANK OF AMERICA, N.A, | * |
| BAC HOME LOANS SERVICING, LP, | * |
| and NATIONSTAR MORTGAGE, LLC, | * |
| | * |
| Defendants. | * |
| | * |

MEMORANDUM & ORDER

TALWANI, D.J.

Plaintiff Andrew S. Zucker brings this suit against Defendants Bank of America, N.A., and BAC Home Loans Servicing, LP, for breach of contract and the covenant of good faith and fair dealing (Count I), and against Nationstar Mortgage, LLC, for violating 12 U.S.C. 2605(f) (Section 6(f) of the Real Estate Procedures Act) and 12 C.F.R. § 1024.41(g) in connection with a foreclosure sale (Count II). Presently before the court is Defendants' Motion for Summary Judgment [#55]. As Zucker does not oppose the motion for summary judgment on Count II, see Opp'n to Mot. for Summ. J. ("Opp'n") [#61], Defendants' motion as to that count is ALLOWED. For the reasons set forth below, Defendants' motion for summary judgment as to Count I of the Complaint [#1] is DENIED.

I. Factual Background

In 2005, Plaintiff Andrew Zucker obtained a $396,625.00 loan secured by a mortgage to purchase his home in Bedford, Massachusetts. Def.'s Statement of Undisputed Material Facts ("Def.'s Statement") ¶¶ 1-3 [#57]; Pl.'s Response to Def.'s Statement of Material Facts (Pl.'s

Response") ¶¶ 1-3 [#63]. Zucker failed to make timely payments on the loan beginning with the payment due in June 2009, which was not made until October 9, 2009. Def.'s Statement ¶ 11 [#57]; Pl.'s Response ¶ 11 [#63]. On October 13, 2009, the Servicer[1] sent Zucker a Notice of Intent to Foreclose, notifying him that the loan was in default and that Zucker had the right to cure the default by paying $10,634.96 by November 12, 2009. Def.'s Statement ¶ 12 [#57]; Pl.'s Response ¶ 12 [#63].

The following day, the Servicer sent Zucker another letter telling him about the opportunity to participate in the Home Affordable Modification Program ("HAMP"). Def.'s Statement ¶ 15 [#57]; Pl.'s Response ¶ 15 [#63].[2] The letter invited Zucker to participate in a three-month trial period, during which time Zucker would make reduced loan repayments of $1,395.00. The letter informed Zucker that he would shortly receive a package with additional details and documents, but that he could "[g]et started by making [his] first trial period mortgage payment of $1,395.00 today." Def.'s Statement Ex. B-7 [#57-9].

In a subsequent package, dated October 19, 2009, the Servicer again invited Zucker to send a first payment. Def.'s Statement Ex. B-8 1 [#57-10]. The letter continued, "Once you've made your first trial period mortgage payment, the next step is for you to return the requested documents and enclosed forms in order to finalize the three-month trial period and qualify for the permanent modification of your loan." Id. Enclosed among other documents were the HAMP

---

[1] The Servicer at that time was BAC Home Loans Servicing, LP. Def.'s Statement ¶ 6 [#57]; Pl.'s Response ¶ 6 [#63]. In July 2011, BAC Home Loans Servicing merged into Bank of America, N.A. Def.'s Statement ¶ 6 [#57]; Pl.'s Response ¶ 6 [#63]. Nationstar Mortgage, LLC began servicing the Loan in October 2012. Def.'s Statement ¶ 7 [#57]; Pl.'s Response ¶ 7 [#63].

[2] HAMP is a federal program established in the wake of the 2008 foreclosure crisis that provides incentives for loan servicers and lenders to give permanent loan modifications to struggling home owners. Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 228 (1st Cir. 2013).

2

Trial Period Plan ("TPP"), a Hardship Affidavit, and Tax Information Form for Zucker to return to the Servicer. Id. at 3.

The TPP states:

> I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and [the] Servicer provides me with a copy of this Plan with the Servicer's signature.

Def.'s Statement Ex. B-8 5 [#57-10]. Zucker executed and returned the TPP to the servicer and was subsequently provided a signed copy of the TPP from the servicer. Zucker Aff. [#62] ¶ 5.[3]

The TPP provided further that its effective date was December 1, 2009, and that under the TPP, payments were due on December 1, 2009, January 1, 2010, and February 1, 2010. The TPP also provides the following: "If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement . . . as set forth in Section 3." Def.'s Statement Ex. B-8 5 [#57-10]. Section 3, in turn, provides:

> If I comply with the requirements [of the TPP listed in] Section 2, and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges associated with overdue loan payments remaining unpaid as of the date immediately before the modification.

Id. at 7. Zucker states, and Defendants do not contest, that he "complied with Sections 1 and 2 of the Trial Period Plan in all respects" and "made each of the payments described in the Trial Period Plan Agreement." Zucker Aff. ¶¶ 8-9 [#62].

---

[3] Defendants assert that "there is no evidence in the summary judgment record to show that the Trial Period Plan was executed by both parties or that a copy of the Trial Period Plan was returned to Zucker with the Servicer's signature." Def.'s Supp. Br. 4 [#74]; see also Def.'s Mem. 8 [#56] ("Zucker does not produce a copy of the TPP signed by him, much less a copy countersigned by the Servicer"). This assertion ignores Zucker's affidavit.

On May 6, 2010, Bank of America sent Zucker a letter stating, "Unfortunately, your loan is not eligible for a Home Affordable Modification." Def.'s Statement ¶ 19 [#57]. Zucker "does not recall ever receiving this denial letter." Pl.'s Response ¶ 18 [#63].

Zucker never received a permanent loan modification. Def.'s Statement ¶ 22 [#57]; Pl.'s Response ¶ 22 [#63]. The Servicer has not yet held a foreclosure sale of the Property. Def.'s Statement ¶ 27 [#57]; Pl.'s Response ¶ 27 [#63].

II.     Standard

Summary judgment is appropriate where the party moving for summary judgment "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if an issue can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A fact is material if it has the potential to affect the outcome of the case. Id. The court "must construe the record in the light most favorable to the nonmovant and resolv[e] all reasonable inferences in the party's favor," but can "safely ignor[e] conclusory allegations, improbable inferences, and unsupported speculation." Collins v. Univ. of N.H., 664 F.3d 8, 14 (1st Cir. 2011) (citation omitted) (first alteration in original).

III.    Discussion

Under Massachusetts law, a plaintiff alleging breach of contract must prove "that a valid, binding contract existed," the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach. Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007). Courts in this district have recognized that trial period plans may amount to binding contracts. See Shilo v. Ditech Financial LLC, No. 16-cv-11564-DJC, 2017 WL 3202725 at *6 (D. Mass. July 26, 2017); Traut v. Quantum Servicing Corp., No. 15-cv-

13401-NMG, 2016 WL 8844254 (D. Mass. Aug. 4, 2016). "[E]very contract implies good faith and fair dealing between the parties to it," which requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237-38 (1st Cir. 2013) (quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 703-04 (Mass. 2010)).

Zucker claims the TPP was a binding agreement that required Bank of America to offer a permanent loan modification agreement after the conclusion of the three-month trial period established by the TPP. Compl. 14 [#1]. Bank of America, in turn, contends that the TPP did not obligate the Servicer to offer Zucker a permanent modification because Zucker did not qualify for the modification under HAMP.[4] Def.'s Mem. 8 [#56]; Def.'s Suppl. Br. 2-5 [#74].

Under HAMP, home loan servicers assess eligibility for a loan modification using a set of guidelines promulgated by the Treasury Department. Young, 717 F.3d at 228. One of the criteria servicers use to assess eligibility is the net present value ("NPV") test. The NPV test is "essentially an accounting calculation to determine whether it is more profitable to modify the loan or allow the loan to go into foreclosure." Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012) (quotation omitted). "If the NPV result was negative—that is, the value of the modified mortgage would be lower than the servicer's expected return after foreclosure—the servicer was not obliged to offer a modification. If the NPV was positive, however, the Treasury

---

[4] Bank of America argues as well that Zucker sustained no actual damages "from any alleged breach" by the Servicer. Def.'s Mem. 8 [#56]. Defendants' Statement of Undisputed Material Facts [#57] does not include facts relating to damages and the issue therefore is not properly before the court on summary judgment. In addition, Bank of America argues that neither the original Note nor the Deed of Trust required the Servicer to permanently modify Zucker's loan or provide him loss mitigation assistance. Def.'s Mem. 7-8 [#56]. Whether or not this is the case has no bearing on whether the TPP later created obligations, as Zucker alleges.

5

directives said that 'the servicer MUST offer the modification.'" Id. (quoting Treasury Supplemental Directive 09-01 (Apr. 6, 2009), available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf ("Supplemental Directive 09-01")). According to the Servicer's letter, the reason Zucker's modification was denied was: "Negative NPV. The Home Affordable Modification Program requires a calculation of the net present value . . . of a modification using a formula developed by the Department of the Treasury." Def.'s Statement ¶ 19 [#57].

Bank of America contends that "federal guidelines *prohibited* Bank of America from offering a permanent modification under HAMP." Def.'s Mem. 6 [#56] (emphasis added). But Bank of America cites no authority that supports this assertion. Nor can it. Rather, under HAMP, where an individual is otherwise qualified for a loan modification, "the servicer MUST offer the modification" if the NPV of the modification is positive, and "has the option of performing the modification in its discretion" if the NPV is negative. Supplemental Directive 09-01 at 4. Accordingly, while a negative NPV relieves Defendants of an obligation to offer a loan modification under the HAMP program itself, it is not grounds for failing to comply with the terms of a contract if the contract required the Servicer to offer the modification.

The TPP itself, once in effect, conditioned the offer of a permanent modification on only two requirements: that Zucker successfully comply with the requirements in Section 2, and that Zucker respond truthfully to the questions in Section 1. There is no dispute that these terms were met. Nowhere does the TPP indicate that, once the TPP is in effect, qualification for a permanent modification was contingent on anything other than those two conditions.

Bank of America is correct that the TPP provides on its face that it would go into effect only if the Servicer signed a copy of the agreement, and that the Servicer would do so only "if

[Zucker] qualif[ied] for the Offer." Def.'s Statement Ex. B-8 5 [#57-10]. Defendants argue that the summary judgment record does not include an executed copy of the TPP. On summary judgment, however, the court must credit Zucker's assertion that he received such a signed agreement. See Collins, 664 F.3d at 14.

Accordingly, Defendants' motion for summary judgment is DENIED as to Count I and is ALLOWED as to Count II of the Complaint [#1].

IT IS SO ORDERED.

Date: March 6, 2018                                         /s/ Indira Talwani
                                                            United States District Judge